We'll move to the second of our cases on the day calendar for argument, U.S.A. v. Kochonies. I'm not sure I've pronounced that correctly, but we'll hear from Defensive Counsel Stephanie Karvlin. Well, Judge, you did pronounce my name correctly. This is Stephanie Karvlin for Mr. Kochonies, representing him in this appeal. This case presents the need for this court to resolve an issue that court left open a year ago, in 2019, in United States v. Pelequa. And that is, what showing does an appellant have to make, not when he's seeking to withdraw his plea, but when he's solely seeking to invalidate his appellant waiver? What does an appellant need to show in those circumstances to meet the third prong of the plain error test? That would be to demonstrate that his substantial rights were violated. The claim was made in Pelequa that this court should adopt the same or similar standard that the Third Circuit, the Sixth Circuit, and the Ninth Circuit have already adopted, which is not that an appellant has to show that it's reasonably probable that he wouldn't have entered a plea, absent the problem with the plea allocution, but that there's a reasonable probability that he didn't understand that he had a right to appeal and that he was giving up that right. And that analysis has to be made based on the record as a whole. And under that analysis, the waiver cannot be enforced in this case. First of all, the plea in this case took place immediately following a competency hearing. Mr. Cochiones had been found to be incompetent by an evaluation at the Federal Correctional Center. He was later found to be competent. The district court ordered an additional competency hearing, and the examiner did find him to be competent. He testified, and the judge made the finding right before the plea allocation. The doctor testified that Mr. Cochiones was competent, but that the doctor couldn't make a prediction about whether or not that would be true, that it was a fluid situation, and that particularly when Mr. Cochiones was under stress, he tended to revert into a world of fantasy. But then we transition into the Rule 11 hearing, which I think can only be characterized as exceedingly odd. First of all, Mr. Cochiones repeatedly referred to himself in a plural form, which is consistent with the fantasies that various examiners have described. He referred to himself as we. When he was asked, when he was taking the oath, do you promise to swear to tell the truth? We do. When he was asked if he was satisfied with our attorney, if this attorney, did he understand, did he feel like the attorney had done a good job? He said yes, to the best that we know. Even when he was providing a factual basis for the plea, he said we knew it was wrong. We received a single photograph in August, and we knew what we were doing was wrong. The other extremely troubling aspect of this Rule 11 hearing is that the majority of the explanation to Mr. Cochiones of the right he was taking, he was waiving, were not given by the district court, but by given in a sign that were not a part of the record by his attorney. And that situation arose because Mr. Cochiones couldn't answer the questions that the district court was asking without checking with his attorney. Again, that's a perfectly legitimate thing for an attorney to advise a client. But when the lawyer is then providing essentially the explanations of what a waiver is, what a guideline range is, does he understand that he's waiving his rights, that doesn't provide this court with a basis or anyone who reviews it with a basis for determining that Mr. Cochiones really knew what he was doing. What was he waiving? Even at the very end of the plea allocation when the district court got to the point of asking, you know, I've just explained all these rights to you. Are you waiving these rights? Mr. Cochiones said, what do you mean? I don't understand that. He couldn't understand a waiver. His court, his attorney, again in a sign, again in something that is not on the record, explained whatever he explained. So this court is left with no basis for evaluating whether or not Mr. Cochiones understood any of his basic rights. District court also never explained or had the government explain the elements of the offense. The elements of the offense weren't listed in the plea agreement. The district court didn't advise Mr. Cochiones that he had a right to trial by jury, any right to persist in his plea if not guilty. And most specifically and relevant in terms of the waiver of the appellate right, when the district court was reviewing the appellate right, what the court did is he lumped together in one question a number of different facts. He asked Mr. Cochiones, do you understand you're waiving your right to attack the statute of limitations, to attack venue? You're agreeing to pay $100 special assessment. You're agreeing to pay that by check, certified check of $100 to the clerk of court before sentencing, and you're waiving your right to appeal or bring a 2255. Even then, Mr. Cochiones didn't say, yes, I understand all that. He asked the court, what's a 2255? Again, the district court didn't answer. His lawyer did in an off-the-record conversation. So in this case, unlike all the other cases that this court has considered, Paliqua, Toledo, United States v. Cook, in each of those cases, there was a basis for the court to conclude that even if there was some violation of Rule 11 or some failure to comply, and in none of those cases was there the whole scale failure to follow the requirements of Rule 11. But even in those cases, there was some other basis for the court to conclude on the record that the defendant knew what he was doing. For example, Mr. Paliqua had said that he had reviewed the plea agreement with his attorney prior to the plea. He had reviewed every provision of it. He understood it. Same thing in Cook and Toledo. There was basis in there for saying that the client, the defendant, understood the right that he was waiving. So even if the district court failed to say, look, you may be subject to restitution in this case, the client had acknowledged that he had discussed that term of the plea agreement with his attorney. One minute. None of that happened in this case. So I suggest, Your Honors, that this now provides you with the need to determine what standard should this court apply in these circumstances. What substantial rights have been violated when somebody seeks to invalidate an appellate waiver? And I would suggest that the appropriate standard there is, is there a reasonable probability shown on the record, the defendant's burden, appellant's burden, that he didn't understand that he had a right to appeal and he didn't understand that he was waiving that right to appeal? I mean, that makes sense in this context. The whole issue arose in the 19th Supreme Court's determination, Ninth States v. Vaughn, and then later Dominguez Benitez, that Rule 52B, the Plain Air Standard, in terms of analyzing Rule 11 violations. So the question in those cases was when somebody seeks to invalidate their plea, what do they have to show to show prejudice, to show harm? And it makes sense in that context that to show harm there, you have to show that you wouldn't have taken the plea. Because if you would have taken the plea, no harm. Completely different in this situation, where what somebody is saying is, I didn't understand. And if you go back to sort of fundamental principles about waiver, that is the basic sort of due process issue here, is that if you're giving up a right, you as a defendant in a criminal case have to be told what that right is, you have to be told you're waiving it, and the court has to ensure that you understand those two things. So I would suggest that the court should not give effect to the appellate waiver in this case. And that is an adoptive standard, I assert. Thank you, counsel, very much. Judge Parker, do you have any questions? I have a couple questions. First of all, can you assure us that the government would have given your client this plea deal that he got without the waiver? I mean, it was a deal that had substantial benefits to him. It did have benefits. 20 years below otherwise possibly applicable guidelines. 10 years, I'm sure. It did have a substantial benefit to him, Your Honor. And I could never assure the court nor could any lawyer what the government would have done. Is it reasonable for you to ask the question and to conclude that that was part of the bargain for the government? Yes. But the government... What reason do we have to think that it was not? There is no reason to think that it was not. And had he knowingly and intelligently waived, entered into that deal, that would have been fine. But the argument is that he didn't know what he was doing. He didn't know what he was waiving and that that, or at least it's not, it's reasonably probable based on the record in this case, that he didn't understand he had a right to appeal and he didn't understand he was giving up that right. So regardless of the benefit he was getting from it, he still has to understand the terms and agree to them. Yeah, but the judge told him he was giving up a right to appeal and a right to file a 2255. He apparently, he indicated there was some confusion. He didn't understand that. He turned to his lawyer and sought an explanation. And then he returned to the colloquy with the district judge and said he agreed to that. Yes. And his lawyer could have said anything. It always seems to me a possibility that a defendant, because of whatever reason, language barriers, lack of education, does not understand facets of any judicial proceeding, particularly a sentencing. But the usual cure for that is that he's got a lawyer up to the Second Circuit standards standing at his elbow who explains things that the defendant may not know. And I'm not sure I understand your argument as to why that hadn't happened here. Yeah. Okay. Your Honor, what I would say is that we don't know what his lawyer said. Well, you never know. I mean, the lawyer was standing right there. There was obviously a back and forth, a discussion or a representation about what Judge Johnson just said. Yes. But, Your Honor, under that standard, the district court wouldn't have to say anything during a Rule 11 elocution because you're engaging in a presumption that the lawyer has done the court's job. There's a reason that Congress and Rule 11 gives that job to the district court judge. Do you think it was something improper about asking, count his lawyer what a waiver meant and getting advice from counsel about that? What was wrong with that? Absolutely. Nothing's wrong with it. It's something I do every day when I take a plea. What's wrong with it is that the district court didn't then follow up and say, okay, you've spoken with your lawyer. Now, are you waiving? You understand a waiver means you're not going to be able to do this later. You're giving up your right to do that. And it wasn't just with respect to the waiver. How is that substantively different from what happened? Because, first of all, the background going into this case, Judge, the obvious difficulties the client was having, this is not a normal situation where, you know, every I wasn't dotted and every T wasn't crossed. It was every single fundamental issue the client had to consult with his attorney and many of the rights that he was entitled to be advised of. He wasn't advised of on the record by anyone, either by conferring with his attorney or by the district court judge. So it is very different from what routinely happens. What is it you're looking to appeal? What would be the issues on appeal? The procedural and substantive reasonableness of the sentencing and the procedural reasonableness of the sentencing. The district court made no findings with facts as to the guidelines. It didn't reach a conclusion on the record in open court as to the guidelines. It did not provide a reason for the sentence in open court on the record. The sentence was infected by procedural and substantive unreasonableness. If we agree with your approach here, you are able to really raise any issue you want on appeal. Well, what you're able to raise is that your waiver was not valid. And therefore, yes, it would be essentially sentencing issues because if someone goes to trial and loses, they haven't waived the right to appeal. So sentencing issues, people would be able to raise on appeal. What about competency questions? Could you raise those on appeal? I think you could raise anything that if a waiver is not valid, then you can appeal whatever you could have appealed anyway, absent the waiver. Thank you. Judge Park? No questions. Thanks. I have a few questions for counsel. Let's assume for the argument, this is hypothetical, that you prevail here. I'm following up, in effect, on something that Judge Parker suggested. So let's assume you prevail. What's the decree that you seek from us? A remand for resentencing. Right. So if it goes back, why isn't the government entitled to reopen the whole thing? I mean, if, as you say, there's some question of competency or whatever, or with respect to your clients having understood the plea agreement, presumably, we're back to square one. Isn't that right? No, Your Honor. I'm not seeking, nor is Mr. Kochani seeking, to withdraw his plea. What he is saying is that the waiver provision did not voluntarily and knowingly waive his right to appeal. He's not arguing that he wasn't competent. He's not arguing that he didn't understand the plea or what was happening. He is saying that it is not apparent on the record and, in fact, it's reasonably probable from everything in this very unusual Rule 11 hearing that it's reasonably probable that he didn't understand he had a right to appeal and that he was waiving that right to appeal. Go ahead. All right. I would think that. All right. So we remand for resentencing. I don't think that we're in a position to do anything more complicated than that in response to your appeal, assuming that you prevail in that respect. This matter goes back to the district court, and we have a situation in which our client has pleaded guilty, and the judge is then required to resentence and to follow what, in your view, would be a number of other required steps. And he does that, and then he imposes a sentence. Is that right? Yeah. Are you sure that this is in your client's interest? I'm sorry. Yeah, I'm sorry, Your Honor. I'm wondering if you had an opportunity to fully disclose and discuss with your client what the effect of your victory in the Court of Appeals would be. I have fully disclosed and discussed with the client, orally and in writing, the risks and benefits of pursuing the appeal, Your Honor. Judge Branis, let me just interject. Judge Branis, let me just ask, if I may, to ask one more question. You go back, and you were going to argue that the sentence wasn't substantively reasonable. Is that right? Yes. And wasn't procedurally reasonable. Yes. Suppose it turns out that the judge had made, and the government has an opportunity to respond to those arguments, right? Yeah. Suppose it turns out that Judge Johnson has made an error, and the government's correct. Can he then impose a higher sentence? I think he'd only be able to impose under United States v. Pepper. He could consider any conduct if Mr. Crocione sentenced his sentencing. He obviously couldn't impose a higher sentence as a retaliation for a successful appeal. You brought up a procedural matter. You argued it. The government argued. You lost. The government, not retaliation. There was an error made in the guideline calculation. Instead of 290, it was, you know, whatever, but it was substantially higher than 144. Well, what the district court put, he thought the sentencing guideline range in the statement of reasons was 292 to 362. Right. The maximum would have been 240, because it's passed, because it's a 20-year maximum. But that gives one reason to believe that the district court was sentencing Mr. Crocione with that thought in mind, with that guideline range in mind. And that's another problem, legally, another error. So there's sort of a one-sided remand you're seeking, where you get benefits, but there's no—it's not really an adversarial position. I wouldn't say it's any different from any remand for resentencing, which is that both parties will argue whatever they argue on sentencing. The government will have an opportunity to be heard on sentencing. Okay. Thank you. Judge France, I'm sorry for interrupting. No, no, not at all. That's precisely the line of inquiry that I was contemplating, and I'm still not certain I understand what you will have achieved by getting a remand ordered by our court. The district judge, essentially, absent any evidence or suggestion of retaliation, you will be asking him to get it straight, to do it correctly. And he would determine what the correct calculations may be after he's heard from you and after he's heard from the government. And we don't know, absent any evidence of animus or retaliation, what it is that Judge Johnson in those circumstances would decide, do we? No, and if I can just clarify one point, Your Honor, I think I was misunderstood. I'm not saying at all that Judge Johnson would retaliate. What I'm saying is that he could change the sentence for any reason other than retaliation. He could change it because of subsequent events. Right. And what I accomplished by doing that is what I always accomplish or attempt to accomplish in these cases, which is consult with my client about how my client would want to proceed, give my client my best, most strongly worded advice, and then execute, as long as it's professionally appropriate, execute the client's will. Is it not the case that Judge Johnson on remand would be able to, and let's assume that with your guidance, he adopts the guidelines range that is recommended by you after he's heard from you and from the government. And what if he decides not to go below the calculated guidelines? You would have no trouble with that, would you? Because the presumption is that the guideline is legitimate and you will have convinced him of that. And he no longer, he may not be interested in providing any further benefit to your client. Presumably, he provided a benefit to your client when he imposed a sentence substantially below the calculated guidelines. Now we're going to recalculate the guidelines, and he may just decide that the guidelines as calculated seem entirely reasonable and serve the relevant purposes of sentencing. Isn't that right? I don't believe that he could increase Mr. Cochione's sentence absent some reason. You know, absent some conduct on Mr. Cochione's behalf. What were the reasons given, if at all? And the government will wish to be heard on this very question. On what basis did Judge Johnson impose a sentence less than apparently prescribed by the applicable guidelines? Part of the issue on appeal is the absence of an explanation for the sentence. What Judge Johnson did say is that he considered the psychiatric report and all the other relevant factors in the case, and that was his sentence. But there's no doubt that he imposed a sentence substantially below the prescribed or suggested guidelines. Is that right? There were three different possible guideline ranges, and it was well below any of them. The sentence imposed, the lowest guideline range was 168 to 210. The sentence the judge imposed was 144 months. There were two other guideline ranges that were substantially higher than that. The lowest was 168 to 210. All right. All right. So we'll hear from the government momentarily. Let me have one just final follow-up question, please. Suppose you get back to Judge Johnson and he says, gee, I thought there was just a Jane Doe I and a Jane Doe II. This is hypothetical. I misread some of the materials before me. And, gee, there was a Jane Doe III and a Jane Doe IV. So I missed, and each of these generated a separate two-level enhancement. I missed those. And my 144 was calculated on my missing those. Could he add them back and change the sentence? Well, my concern is that Judge Johnson was starting from the guideline range that he put in the statement of reasons. You know, you're reopening everything back before Judge Johnson. Could Judge Johnson identify an error he'd made in the calculations that presumably was a predicate for his 144 months? And, gee, you know, the correct lower guideline limit level was higher than I had thought, erroneously. So I'm going to go with the correct one. Could he do that? I don't think that's really an issue in this case. I didn't ask you if it was an issue. I asked you whether he could do it. Can a district judge on remand impose a higher sentence? My understanding is that, yes, for any reason other than retaliation. There has to be a reason. But why aren't you opening your client to that possibility, aren't you? My client, informed by me, has made the decision that he wants to pursue this appeal. I can't obviously discuss my conversations with him, but I'm fully aware of my obligation. Okay. Thank you. Thank you very much. Judge Parker, any questions? No, thank you. Fine. So we'll turn to Attorney McConnell, whose responses or comments may or may not be informed by the line of question pursued by Judge Parker and by me. Yes, Your Honors. Thank you, Artie McConnell, for the United States. I represented the government at the district court level. Just at the outset, I'll say that if Mr. Kachonis was capable of consulting with counsel and understanding the various risks and rewards and permutations of the appeal, then he was certainly able to understand the appellate waiver that he entered into as part of his written plea agreement. The challenge to his sentence is barred by the appellate waiver in his plea agreement. He confirmed at the plea proceeding that he had signed it, it had been discussed, it was gone through during the plea, and that he understood the appeal waiver provision in particular. And because his waiver was knowing involuntarily, that waiver needs to be enforced. But even considering the questions about his sentence on their merits, his below-guideline sentence is certainly free of any procedural or substantive error. I want to speak first about the waiver itself, because the record is clear that he knowingly and voluntarily waived a sentence below 235 months. At the outset of the proceeding, which immediately took place after a competency hearing, the court inquired as to what his name was. He answered his name correctly, Raymond Kachonis. He didn't first start out the proceeding by identifying himself as we. He was asked about medications that he took. He gave very thorough explanations about what he was taking, their effects on him, but that his mind was clear and he was able to proceed. Counsel confirmed that. The written plea agreement, which he signed and acknowledged that he signed, contained his initials on the page that actually codified the waiver, where counsel had made a handwritten change to an unrelated portion of the plea. His allocution was under oath. This was not a defendant who was a passive observer at his own plea proceeding. He injected himself at various points when he didn't understand something. And counsel, as he was supposed to do, explained to him when he was unclear about something. I think to suggest that something nefarious went on outside the record when his court-appointed lawyer is doing exactly what he is there to do during a plea proceeding, I think is wrong. The strange mannerisms that he exhibited during the plea were really not strange at all to me, to his attorney, or to the court in light of the competency hearing that was just held. And really, had he said I instead of we, this would not be an issue at all. And the reality is that what the competency hearing established was not simply Mr. Caccione's competence to plead guilty, but more importantly, where this we persona that he sometimes devolves into comes from. And notably, the doctor who testified at that hearing stated flatly that he does not suffer from any psychotic mental disorder. He does not have any authentic disassociative phenomena, I believe was the term. This use of the we, referring to himself in the plural, was volitional. And it was something that he had a tendency to do, yes, when under stress, but also to manipulate things towards his advantage. The report that was actually done over the course of four months at Butner, which was by far the most comprehensive evaluation of the defendant during the pendency of the case, said that he had an extreme exaggeration of symptoms. And that he would do this when he sought secondary gain, such as attempts to avoid prosecution, sway sentencing decisions, or plea bargains, and by using his mental illness as an excuse. So the use of we during the plea proceeding was really of no moment to the participants who were involved, because we had just heard a very thorough explanation about where it comes from and its relevance. And it really has no relevance. So I don't think there was any error in the plea proceeding. It was a little odd to be sure. His idiosyncrasies and his mannerisms certainly were not the norm, but they don't undercut the knowing and intelligent waiver that he made, and certainly don't call into question the plea as a whole. Which, as your honors point out, counsel is not asking for. It's interesting that all of these instances where the defendant's capacity throughout the plea proceeding are brought up, but they're only asking for those to be considered with respect to the plea waiver. And it's exactly the sort of surgery on a plea agreement that the court cannot do. His substantial rights were unaffected by any perceived error, and Mr. Kachonis does not even attempt to advance the argument anywhere in his brief or in his argument today, but for his misunderstanding, he would not have pled guilty. Instead, the court is being encouraged to adopt a standard which is directly at odds with the Paliuka case that was decided last year. And really, a contrary rule to that just upends the plea negotiation and plea agreement process and awards the defendant a windfall. Your honors touched on this during your questions. Not only was the defendant giving a favorable written plea agreement, but the charge he was allowed to plead guilty to carried a substantially lower mandatory minimum sentence than the top count in the indictment. Which was a production count, which was completely supported by the evidence in the case. It was certainly not done for evidentiary reasons. So that was part of the bargain for exchange, and now the defendant is trying to get another bite at the sentencing apple, and has all but assured the court that you will be faced with another appeal if Judge Johnson chooses to sentence the defendant to a higher sentence than the 144 months that he got here. Turning to the procedural or substantive error, if you look at the sentencing transcript, the government and the defense counsel had agreed on a guidelines range in the plea agreement that was lower than that delineated in the probation report. To act as though the district court was somehow unaware of the guidelines because of really what the ministerial error in the statement of reasons, it simply doesn't say that because the advisory range is over the statutory maximum that the effective guidelines range is 240 months. It just doesn't make sense when, during the proceeding itself, all parties were clearly on the same page, and there was no objection by counsel when the statement of reasons came out shortly after sentencing. The court adopted the PSR without error, which did accurately state that the effective guideline range based on the statutory maximum was 240 months, but this is really neither here nor there. The fact remains is that the statement of reasons articulated why the court decided to vary downward. It certainly made sense in context of the arguments that the defense counsel made. Obviously, the government argued for a much higher sentence, but regardless of what guidelines calculation the court were to adopt, whether it was the one in the plea agreement, the one in the PSR, or the one that counsel is advocating for today, the sentence that was ultimately imposed is so far below the guidelines that there is just no substantive error. The idea that Mr. Caccione's case and the sentence that he received should be considered amongst the collection of cases where sentences are imposed for mere possession of child pornography just ignores the facts of this case. He is a grown man. He posed as a teenage girl on a social media website in a predatory scheme that lasted months and involved multiple underage victims, where he used his cunning and overt threats to procure increasingly graphic pictures and videos from his minor victims in sexual positions and performing sexual acts. This is not a case that is analogous to a simple possession of child pornography case, and to try and consider it in that context is simply not correct. The waiver was valid. It was knowingly and intentionally waived, and it bars the challenge to the defendant's sentence, but even if you were to consider his sentence on the merits, there is no procedural and certainly no substantive error here. Thank you. Judge Parker, any questions? I just have one question. There are a number of – there are several topics that are supposed to be covered by Rule 11 elocution that Judge Johnson just didn't get to, like your right to a jury trial and so forth. How are we to think of those? Suppose there's a Rule 11 – I mean, does an appeal waiver wash away any kind of infirmity in a plea elocution? No, it certainly does not, but that's not what the appellant is asking for here. Certainly, if there was a Rule 11 error that impacted Mr. Caccione's substantial rights, then there would be something to review, and the remedy would be to vacate the plea and to take a new plea that complied with Rule 11. Suppose, hypothetically, the defendant hadn't been told that he had a right to a jury and a right to a jury that sets guilt unanimously beyond a reasonable doubt. Would mistakes like that serve to puncture an appeal waiver? Hypothetically, I think that, again, you have to look at each plea proceeding on its own. I think that that's a difficult question to ask. I think it's markedly different from what is being asked of the court here, which is to look at – Hypothetically, counsel. I think it certainly could, but I don't think it would carry the day on an appeal waiver. I don't think it necessarily undermines the knowing and voluntariness of the waiver. Certainly, in this case, the defendant was advised of those rights and indicated that he understood them. I would point out that the list of other rights that were being waived, counsel seems to be arguing that putting all of those together was somehow confusing to Mr. Caccione's. I think it's notable that he asked, well, what's a 2255 when the court used that vernacular in the context of the appeal waiver? This is someone who's clearly aware of what's going on, and when he doesn't understand something, he asks about it and has it explained to him before proceeding to the next part of the plea proceeding. Thank you. Judge Park. No questions. Thank you. Thank you. All right. I have no questions, so we'll reserve decision. No, I'm sorry. Attorney Carvelin has reserved three minutes. Yes, Your Honor. Thank you. I think the last question poses where I'd like to start, which is, is there some standard, some level below which the requirements of Rule 16 have not been met that it is in violation of Rule 16 is so significant, I'm sorry, Rule 11 is so significant that the waiver has to be voided. We are at that point in this case. We had a judge not advising the client that he's giving up his right to trial by jury. We have a judge not advising him that he has a right to persist in his plea of not guilty. There were no elements of the offense recited during this Rule 11 hearing. That is so contrary to every other Rule 11 hearing I'm sure that comes before this court. In addition to that, the point about everything taking place off the record is not that Mr. Cochrane as a lawyer shouldn't have been stepping in and helping clarify, but that given the state of the record in this case, it's impossible to determine what Mr. Caccione has understood. And that's not just in general, not just all the theoretical or technical Rule 11 violations, but that's also with respect to the waiver in this case. The sequence is, the district court talks about various rights that Mr. Cochrane will be waiving. Your right to attack the statute of limitations, your right to attack venue, you've got to pay this special assessment by certified check by such and such a date. And by the way, you're waiving your right to appeal and collaterally bring a 2255. Mr. Cochrane confers with counsel, then says yes, argues it's not clear what he's saying yes to. And what's the support for that? Because several minutes later, closer to the end of the Rule 11 hearing, the district judge says, do you understand now, of course, we've talked about all these rights, you're waiving them. And Mr. Cochrane answers, what's waiver? One minute. Attorney, not the district court who provides that explanation. Just with respect to the sentencing portion of it, I just wanted to call the court's attention to your recent decision. It's a couple months ago, April of this year in the United States versus Rosa. And in that case, the court held that the failure of the district court to put on the record in open court was sentencing error, procedural error in sentencing. And that error was not cured by the fact that the district court did that in the statement of reasons. Thank you. Thank you, counsel, very much. Absent any other questions from my colleagues, we'll reserve the decision.